HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID A. KING, *et al.*,

    Plaintiffs,

    v.

TIMBER RIDGE TRADING & MANUFACTURING COMPANY,

    Defendant.

Case No. 2:19-cv-01617-RAJ

ORDER GRANTING MOTION TO DISMISS

## I. INTRODUCTION

This matter comes before the Court on Defendant's motion to dismiss. Dkt. # 32. For the reasons below, the Court **GRANTS** the motion.

## II. BACKGROUND

Plaintiffs David A. King and Maryann E. Voisinet are North Carolina residents.[1] Dkt. # 30 ¶¶ 5.b, 7-8. On October 18, 2018, Mr. King bought a wood-cutting blade for an angle grinder. *Id.* ¶ 12. He bought the blade on Amazon.com, where the blade was advertised as being suitable for use on an angle grinder and for "beam notching . . . with NO kickback!" *Id.* ¶ 13. The Amazon.com listing further emphasized that the blade had "awesome cutting ability with NO Kick-Back" given its "patented blade concept" and

---

[1] In response to Timber Ridge's motion to dismiss, Plaintiffs have not provided a separate sworn declaration testifying to the facts in their Second Amended Complaint. Dkt. # 30. For purposes of this motion, facts alleged in the complaint that are uncontroverted by evidence will be taken as true.

ORDER – 1

"specially-designed tooth layout." *Id.* According to Plaintiffs, "kickback" is the "sudden forceful recoil that can occur when using a wood-cutting blade on a power saw," whereby a blade's teeth grip a piece of wood and "cause[] a sudden jolt of force." *Id.* ¶ 10.

With his angle grinder, Mr. King used the wood-cutting blade to cut a wood beam, and despite the advertisement he claims to have experienced a "substantial kickback." *Id.* ¶ 14. He lost control of the angle grinder, and the blade severed tendons in two of his fingers. *Id.* Mr. King now claims that he is permanently disabled. *Id.* ¶ 15. His wife, Ms. Voisinet, claims that Mr. King's disability deprives her of her husband's ability to "do yard-work, open jars, assist in fixing her car, or provide other marital services" to her. *Id.* ¶ 16.

Defendant Timber Ridge Trading & Manufacturing Company ("Timber Ridge") is a Minnesota corporation. Dkt. # 33 ¶ 4. Timber Ridge contracts with an import-export company in Shanghai, China, to supply products sold under its brand. *Id.* ¶ 5. The goods are shipped from China to Timber Ridge's only warehouse, in Bloomington, Minnesota. *Id.* ¶ 6. Timber Ridge then sells its products to retailers and wholesalers, like Amazon.com Services, Inc. ("Amazon"), who in turn resell the products to end consumers. *Id.* ¶ 7. Timber Ridge does not sell products directly to consumers. *Id.* The blade that Mr. King allegedly bought on Amazon.com was a Kwiktool USA brand blade; Timber Ridge owns the Kwiktool USA brand. *Id.* ¶¶ 5, 9.

Plaintiffs are now suing Timber Ridge for the violation of express and implied warranties, failure to warn, false advertising, and fraud. Dkt. # 30 at 12-13. On April 28, 2020, Timber Ridge moved to dismiss Plaintiffs' Second Amended Complaint for lack of personal jurisdiction. Dkt. # 32. Alternatively, Timber Ridge requests that this case be transferred to Minnesota. *Id.* at 17-20.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss claims against it for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Plaintiff has

ORDER – 2

the burden of establishing personal jurisdiction. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). "Where, as here, the defendants' motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* The plaintiff cannot "simply rest" on the bare allegations of his or her complaint, yet all "uncontroverted allegations" must be taken as true. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). Where there are conflicts between parties over statements contained in affidavits, these conflicts must be resolved in the plaintiff's favor. *Id.*

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (citing Fed. R. Civ. P. 4(k)(1)(A)). Washington's long-arm statute, RCW 4.28.185, "extends jurisdiction to the limit of federal due process." *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989). The due process clause grants the court jurisdiction over defendants who have "certain minimum contacts . . . such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction can be found on either of two theories: general jurisdiction and specific jurisdiction. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). A defendant with "substantial" or "continuous and systematic" contacts with a forum state is subject to general jurisdiction. *Id.* On the other hand, "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal quotations omitted).

## IV.  DISCUSSION

Timber Ridge argues that the Court lacks personal jurisdiction under either theory. The Court addresses each type of jurisdiction in turn.

ORDER – 3

### A.  General Jurisdiction

Unless the facts present "an exceptional case," a corporation is typically "at home" and subject to general jurisdiction in the state where it is incorporated or has its principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014). Timber Ridge is not "at home" in Washington, and the facts here are far from "exceptional." Washington is not the state where Timber Ridge is incorporated or where it has its principal place of business. Timber Ridge is incorporated in Minnesota. Dkt. # 33 ¶ 4. Its principal—and only—place of business is in Minnesota. *Id.* And Timber Ridge's relationship with Washington is far from "continuous" and "systematic." It has no offices, no employees, no bank accounts, no phone numbers, and no local agent for service of process in Washington. *Id.* ¶ 16. It does not own or rent any property in Washington, nor has it held any meetings in Washington. *Id.* ¶¶ 17-18. None of its employees have travelled to Washington in the course of their employment. *Id.* ¶ 18.

In their complaint, Plaintiffs concede that Timber Ridge is incorporated in Minnesota and that it has its principal place of business there. Dkt. # 30 ¶ 9. Yet they allege that Timber Ridge has "systematic and continuous contacts with Washington." Dkt. # 30 ¶ 2.b. They offer no evidence or facts to support this allegation. And in their response brief, they do not address general jurisdiction at all. *See generally* Dkt. # 35. Plaintiffs' conclusory allegation of "systematic" and "continuous" contacts is insufficient to find Timber Ridge "at home" in Washington. The Court does not have general jurisdiction over Timber Ridge.

### B.  Specific Jurisdiction

For specific jurisdiction, courts apply a three-part test: (1) the defendant has either purposefully directed his activities toward the forum or purposely availed himself of the privileges of conducting activities in the forum, (2) the plaintiff's claims arise out of the defendants' forum-related activities, and (3) exercise of jurisdiction is reasonable. *Axiom*, 874 F.3d at 1068.

ORDER – 4

The plaintiff bears the burden of satisfying the first two prongs. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). In tort cases like this one, the plaintiff must show that the defendant has purposefully directed activities toward the forum. *Id.* at 802. If the plaintiff meets that burden, the court must then evaluate whether the claim at issue arose from the defendant's forum-related conduct. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). That is, the plaintiff must show that it would not have suffered an injury "but for" each defendant's forum-related conduct. *Id.* The burden would then shift to the defendant under prong three to make a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

Plaintiffs here do not make it past step one of the specific jurisdiction analysis. They fail to show that Timber Ridge purposefully directed its activities toward Washington.

### i. Purposeful Direction

"A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802. Here, Plaintiffs are suing Timber Ridge for the violation of express and implied warranties, failure to warn, false advertising, and fraud, Dkt. # 30 at 12-14, all claims sounding in tort. Therefore, a purposeful direction analysis applies.

Plaintiffs disagree. They say that the purposeful direction analysis is inapplicable, as made clear by the Ninth Circuit's decision in *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Group*, 905 F.3d 597, 605 (9th Cir. 2018). Dkt. # 35 at 4-8. According to Plaintiffs, the purposeful direction analysis is merely an "alternate path for finding jurisdiction" when a defendant did not transact any business or did not commit any tortious acts in a forum state. *Id.* at 4-5. But here, Plaintiffs say, Timber Ridge has in fact conducted business in Washington, the forum state, because it has contracted with Amazon, a third-party Washington resident. *Id.* Given that "jurisdiction in this case is

ORDER – 5

based on in-forum activity," Plaintiffs conclude, "purposeful direction does not apply." *Id.* at 5.

Plaintiff's reasoning is unconvincing. Nothing in *Freestream* suggests that the purposeful direction analysis is inappropriate here. In *Freestream*, the Ninth Circuit explained that, in tort cases, *where* a tort was committed is significant. 905 F.3d at 605. The court explained that personal jurisdiction is usually satisfied when an intentional tort is committed within a forum state. *Id.* at 606. On the other hand, when dealing with "out-of-forum tortfeasors," courts must apply the purposeful direction analysis by using the "effects" test outlined in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984).

The torts at issue here are the violation of express and implied warranties, failure to warn, false advertising, and fraud. If these torts were in fact committed, they were not committed in Washington, where Mr. King was not injured and where Timber Ridge is not incorporated, has no place of business, and has no operations. If Timber Ridge committed these torts, it must have done so as an "out-of-forum tortfeasor," unlike the defendants in *Freestream*, who made defamatory statements in Nevada, the forum state, while they were physically present in Nevada. 905 F.3d at 601-02. The Court will not abandon the purposeful direction analysis simply because Timber Ridge has "form[ed] a contract with a Washington entity like Amazon.com," Dkt. # 35 at 5, which is not itself a tort. Hence, the purposeful direction analysis applies. The Court must now determine whether Timber Ridge's out-of-forum actions were directed at Washington.

    **ii.**  **"Effects" Test**

In the purposeful direction inquiry, a court must evaluate whether a defendant undertakes action that occurs outside the forum but is nonetheless directed toward the forum, such as distribution and advertising. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155-56 (9th Cir. 2006). In doing so, courts apply the *Calder* "effects" test, which requires that a defendant (1) commit an intentional act, (2) expressly aimed at the forum state, (3) that caused harm that the defendant knew was likely to be suffered in the forum

ORDER – 6

state. *Schwarzenegger*, 374 F.3d at 803 (citing *Calder*, 465 U.S. at 789-90).

### (1) Intentional Act

The Court first considers whether Timber Ridge committed an "intentional act." "[A]n intentional act is an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012). Based on their complaint, Plaintiffs allege that Timber Ridge "promised in its advertising that the blade had 'NO Kick-Back' and was safe to use on an angle grinder." Dkt. # 30 at 7. They further allege that Timber Ridge "knew of the especially dangerous nature of using wood-cutting blades on an angle grinder and willfully misrepresented those dangers." *Id.* ¶ 17. They suggest that Timber Ridge made fraudulent statements, false claims, and promises about the wood-cutting blade, sold them the blade, and failed to provide adequate warnings. *Id.* at 12-14. If true, these would no doubt be "intentional acts," satisfying prong one of the effects test.

But these intentional acts belong not to Timber Ridge, but to Amazon. The evidence reveals that Timber Ridge did not sell the blade that injured Mr. King; Amazon did. Timber Ridge sells its products directly to retailers and wholesalers, like Amazon, which then resell the products to end consumers. *Id.* ¶¶ 7, 10. Timber Ridge does not sell its products directly to consumers, nor is it a "third-party" seller that fulfills orders placed through Amazon.com. *Id.* ¶ 11. Instead, Amazon purchases products directly from Timber Ridge, takes title and possession of the products, stores the products, and sells and ships the products to end consumers. *Id.*

Despite that evidence, Plaintiffs still contend that Amazon's sale of the wood-cutting blade must be attributed to Timber Ridge. Plaintiffs do not deny that Mr. King bought the blade on Amazon.com. Dkt. # 30 ¶ 12; Dkt. # 35 at 2. Yet they claim, without evidence, that Mr. King bought the blade through "defendant's Amazon.com listing," which contained "defendant's promise" that the blade would have no kickback.

ORDER – 7

Dkt. # 35 at 2. Plaintiffs thereby claim that Timber Ridge itself, not Amazon, "misrepresented [the] extraordinary dangers associated with kickback." *Id.*

Plaintiffs have given the Court no reason to believe that Amazon's advertisement and sale of the blade at issue must be attributed to Timber Ridge. Timber Ridge's evidence plainly contradicts Plaintiffs' bare allegations that Timber Ridge, not Amazon, sold and advertised the blade to Mr. King.

It is Timber Ridge's, not Amazon's, contacts with Washington that are significant. The specific jurisdiction inquiry focuses on the "relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The relationship must arise out of contacts that the "defendant *himself*" creates with the forum state. *Id.* (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden*, 571 U.S. at 286).

What "intentional acts" should be ascribed to Timber Ridge, then, is unclear. The only act that Plaintiffs present is the entering into a contract with Amazon, a third-party Washington resident. Dkt. # 35 at 2. This "intentional act," however, is unrelated to Plaintiffs' tort claims of the violation of express and implied warranties, failure to warn, false advertising, and fraud.

### (2)   Expressly Aimed at the Forum State

Even if the Court were to assume that Amazon's actions could be attributed to Timber Ridge for purposes of specific jurisdiction, Plaintiffs would not pass the second prong of the "effects" test. Plaintiffs fail to show how the sale and advertisement of the blade were expressly aimed at Washington. For example, Plaintiffs have not shown that they, as residents of Washington were "individual[ly] target[ed]" in the forum state, which would be relevant to a specific jurisdiction inquiry. *Axiom*, 874 F.3d at 1069-70.

ORDER – 8

Indeed, Plaintiffs are not residents of the forum state at all.

At bottom, the significant facts are these: Plaintiffs are North Carolina residents, one of whom was injured by a blade. Dkt. # 30 ¶¶ 5.b, 7, 14-15. The blade was bought in North Carolina; the injury occurred in North Carolina. Id. ¶ 1. The blade was manufactured in China but imported by Timber Ridge to Minnesota. Dkt. # 33 ¶¶ 5-6. The only connection to this forum is that Amazon, a non-party Washington resident, presumably bought the blade from Timber Ridge, took possession and title to it, and then resold it to Mr. King. *Id.* ¶¶ 8, 10-12; Dkt. # 30 ¶ 12. Besides Timber Ridge's business relationship with a Washington resident, Timber Ridge's only connection to this forum is that nearly three years ago, on February 22, 2018, it shipped four saw blades to an Amazon fulfillment center in Dupont, Washington. Dkt. # 33 ¶ 14. The blade that injured Mr. King was not in that shipment, and that was Timber Ridge's only shipment to Washington from August 2015 to November 2019. *Id.*

These facts are too attenuated to find that Timber Ridge "expressly aimed" its "intentional acts" at this forum. In sum, Plaintiffs fail the *Calder* "effects" test and thus fail prong one of the specific jurisdiction analysis.

## V.  CONCLUSION

For the reasons stated above, the Court **GRANTS** Timber Ridge's motion to dismiss for lack of personal jurisdiction. Dkt. # 32. Because the Court is dismissing this action, it need not consider Timber Ridge's alternative request for transfer of venue.

DATED this 6th day of January, 2021.

The Honorable Richard A. Jones
United States District Judge

ORDER – 9